**CIVIL SERVICE COMMISSION**
and City of Estherville,
Iowa, Appellees,

v.

**IOWA CIVIL RIGHTS COMMISSION,**
Appellant,

and

**James A. Montz, Intervenor–Appellant.**

No. 93–1001.

Supreme Court of Iowa.

Sept. 21, 1994.

Rehearing Denied Oct. 17, 1994.

Bonnie J. Campbell, Atty. Gen., and Teresa Baustian, Asst. Atty. Gen., for appellant.

Roger J. Kuhle, John C. Barrett, and John O. Haraldson of the Law Office of Roger J. Kuhle, P.C., West Des Moines, for intervenor-appellant.

James A. Albert, Des Moines, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

In this case we decide the extent to which a civil service commission may use age as a screening criterion in the hiring of police officers. James Montz was not allowed to

compete for a position on the City of Estherville's police force because of his age. He filed a complaint against the City and its civil service commission with the Iowa Civil Rights Commission (ICRC). The ICRC ruled that the City's refusal to hire persons older than thirty-two as police officers violated Iowa's civil rights statute, Iowa Code chapter 601A (1991).[1]

On judicial review, the district court reversed the ICRC. It concluded that Iowa Code section 400.8(1) allows civil service commissions to use age in determining the physical and mental ability of an applicant for a police officer position. Montz and the ICRC appealed. We affirm the district court because we conclude the City proved it would not have hired Montz even if it had not considered his age.

### I. *Factual Background.*

The City of Estherville uses a civil service commission for employment of police officers. *See* Iowa Code § 400.3 (1991). In 1978 the Estherville Civil Service Commission (Commission) adopted a maximum hiring age of thirty-two for police officers. Under the Commission's rule a police officer had to be under thirty-three years of age at the time of appointment.

In 1989, Montz applied for an advertised vacancy on the City's police force. He was forty-three years old at the time. The city clerk, who also served as the Commission's secretary, screened all applications. The clerk determined, if possible, whether the applicants met the minimum standards for police officers under the Commission's rules. Because Montz had reached his thirty-third birthday, the clerk informed him by letter that he did not qualify for the position.

The applicants who survived the initial screening by the clerk took a written test and completed various physical and psychological examinations and tests. Based on the results of these tests and examinations and the applicants' other qualifications, the Commission evaluated the applicants and prepared a certified list of ten candidates. The police chief eventually hired one of the persons on the certified list for the position sought by Montz. The person hired was under age thirty-three.

### II. *Procedural History.*

Montz filed a complaint with the Iowa Civil Rights Commission. The ICRC adopted the proposed ruling and order of the hearing officer. It found that (1) the Commission and the City had discriminated against Montz based on his age in violation of chapter 601A; (2) the Commission and the City failed to prove that age was a bona fide occupational qualification (BFOQ); (3) the Commission and the City failed to prove that Montz would not have been hired because of his educational deficiencies even if his age had not been considered; and (4) the Commission and the City did not prove their defenses of laches and equitable estoppel. The ICRC awarded monetary damages and ordered equitable relief.

On judicial review, the district court concluded that section 400.8(1) governed this case, not section 601A.6. It then ruled that the ICRC's analysis was affected by error of law because the ICRC applied section 601A.6 instead of section 400.8(1). The district court also held that the ICRC's decision was not supported by substantial evidence and was unreasonable and arbitrary. It reversed the ICRC's decision in its entirety.

Montz and the ICRC appealed. Initially, they claim that the district court ignored the appropriate standard of review by making new factual findings on (1) whether age was a BFOQ, (2) whether Montz met the educational requirements for the position, (3) whether Montz would not have been hired regardless of age because he did not meet the educational requirements, and (4) whether the City and Commission had proved a factual basis for their laches and estoppel defenses. They also contend that the district court made several legal errors: (1) in concluding section 400.8(1) is an exemption from the antidiscrimination provisions of section 601A.6 and Iowa Code section 400.17, (2) in using an incorrect legal test for the BFOQ defense, and (3) in applying the doctrine of

---

1. Iowa Code chapter 601A was recodified in 1993 as Iowa Code chapter 216.

equitable estoppel against a governmental agency.

### III. *Standard of Review.*

The Iowa Administrative Procedure Act, Iowa Code chapter 17A, governs judicial review of decisions of the ICRC. Iowa Code § 601A.17(1) (1991). The district court may reverse if the agency's decision was affected by an error of law or was unreasonable, arbitrary or capricious. *Id.* § 17A.19(8).

■ It may also reverse if the agency's decision is not supported by substantial evidence. *Id.* § 17A.19(8)(f). Evidence is substantial if a reasonable person would find it adequate to reach a given conclusion. *Landals v. George A. Rolfes Co.,* 454 N.W.2d 891, 893 (Iowa 1990).

■ When we review the case on appeal, we apply these same standards to determine if our conclusions are the same as those of the district court. *Hanson v. Reichelt,* 452 N.W.2d 164, 166 (Iowa 1990).

### IV. *Governing Law.*

A. *Potentially applicable statutes.* The overriding issue in this case is what law governs. So we begin our discussion with a review of the relevant statutes. Iowa Code section 601A.6(1)(a) was enacted in 1966. It prohibits age discrimination in employment "unless based upon the nature of the occupation." Iowa Code § 601A.6(1)(a) (1991). This statute applies to any person employing employees in the state with certain exceptions not relevant here. *Id.* § 601A.6(6).

Chapter 400 applies to civil service employees. An antidiscrimination provision was added to section 400.17 in 1975. This provision states:

> A person shall not be appointed, promoted, discharged, or demoted to or from a civil service position or in any other way favored or discriminated against in that position because of political or religious opinion or affiliations, race, national origin, sex, or age.

*Id.* § 400.17.

Section 400.8(1) contains a narrower prohibition of discrimination adopted in 1976:

> An applicant shall not be discriminated against on the basis of height, weight, sex, or race in determining physical or mental ability of the applicant.

*Id.* § 400.8(1). The parties agree that this provision applies only to the hiring of police officers, police matrons and fire fighters.

In addition to this antidiscrimination provision, the first sentence of section 400.8(1) refers to "maximum age limits." That sentence has been in section 400.8(1) since 1937 and states in part:

> The commission, when necessary under the rules, *including minimum and maximum age limits,* which shall be prescribed and published in advance by the commission and posted in the city hall, shall hold examinations for the purpose of determining the qualifications of applicants for positions under civil service. . . .

*Id.* (emphasis added).

Neither of the antidiscrimination provisions in chapter 400 contains an exception for the use of discriminatory criteria based on a bona fide occupational qualification.

B. *Positions of the parties.* Montz and the ICRC argue that sections 601A.6 and 400.17 govern this case. They support this position on two bases. First, they contend that section 400.8(1) does not allow the use of age in hiring civil service police officers because it does not mention age discrimination. Second, they assert that section 400.8(1) operates as an exception to sections 601A.6 and 400.17 only with respect to the factors expressly listed in section 400.8(1). As to factors not listed, they argue, sections 601A.6 and 400.17 apply.

The Commission and City claim that the first sentence of section 400.8(1) authorizes maximum age hiring limits. Alternatively, they argue that the antidiscrimination language of section 400.8(1) creates a statutory BFOQ.

■ In deciding which one or more of the three potentially relevant statutes apply here, we must first interpret these statutes. We give an agency only limited deference on matters of law, including statutory interpretation. *Cobb v. Employment Appeal Bd.,* 506

N.W.2d 445, 447 (Iowa 1993). Ultimately, the correct interpretation of a statute is our decision to make. *Id.*

■ C. *Does the antidiscrimination provision of section 400.8(1) allow the use of age in hiring civil service police officers?* The employment situation involved here factually falls within the scope of section 400.8(1) because it involves the hiring of a civil service police officer. Therefore, section 400.8(1) applies. The next question is whether the ICRC is correct in its assertion that section 400.8(1) does not allow age discrimination because age is not mentioned.

"The express mention of one thing in a statute implies the exclusion of others." *Lacina v. Maxwell,* 501 N.W.2d 531, 533 (Iowa 1993). Section 400.8(1) prohibits discrimination only based on height, weight, sex and race. Unless we read the word "age" into this statute, it allows the use of age to evaluate the physical abilities of applicants for police officer positions. *Cf. Sioux City Police Officers' Ass'n v. City of Sioux City,* 495 N.W.2d 687, 694–95 (Iowa 1993) (because section 400.17 does not expressly include family relationships as a forbidden employment criterion, the city could adopt an antinepotism policy). Therefore, although section 400.8(1) does not expressly authorize age discrimination, it allows the use of age by implication.[2]

■ D. *Do sections 601A.6 and 400.17 apply with respect to factors not specifically addressed in section 400.8(1)?* We have concluded that section 400.8(1) allows age discrimination by implication. Sections 601A.6 and 400.17 expressly prohibit it. We must decide whether this conflict is irreconcilable. Montz and the ICRC suggest that these statutes can be reconciled. Although we can interpret sections 601A.6 and 400.17 such that they complement one another rather than conflict, we cannot do the same with section 400.8(1).

Section 601A.6 can easily be interpreted to supplement section 400.17. Although there is some duplication in the statutes as to the characteristics employers may not consider, the statutes differ markedly in an important respect. Section 601A.6 contains a BFOQ exception; section 400.17 does not. Section 400.17, then, carves out from section 601A.6 a subclass of discrimination that is absolutely prohibited in civil service positions. There is no conflict with section 400.17 in applying section 601A.6 to factors not included in section 400.17. Discrimination as to those factors continues to be "conditionally" prohibited under section 601A.6. Thus, sections 601A.6 and 400.17 do not duplicate each other, but rather complement one another.

However, we cannot reconcile section 400.8(1) in the same way. If we construe section 400.8(1) as including a BFOQ exception, then its prohibition of sex and race discrimination duplicates section 601A.6 and becomes mere surplusage. If we do not include a BFOQ exception in section 400.8(1), it duplicates section 400.17 which already absolutely prohibits sex and race discrimination.

■ We will not construe a statute to make any part of it superfluous unless no other construction is reasonably possible. *Iowa Auto Dealers Ass'n v. Iowa Dep't of Revenue,* 301 N.W.2d 760, 765 (Iowa 1981). Moreover, "the legislature will be presumed to have inserted every part in a statute for a purpose and to have intended that every part shall be carried into effect." *State v. Jennie Coulter Day Nursery,* 218 N.W.2d 579, 582 (Iowa 1974). Here, the legislature must have intended section 400.8(1) to function as an independent rule and not as a supplement to section 601A.6 or section 400.17. There is simply no other way to give meaning to all of section 400.8(1).

We conclude section 400.8(1) operates independently with respect to the employment decisions within its scope. Sections 601A.6 and 400.17 do not apply concurrently with section 400.8(1).

Additionally, to apply all three statutes, as we have interpreted them, creates an irreconcilable conflict. Sections 601A.6 and 400.17 prohibit age discrimination and sec-

---

**2.** Because we hold that the antidiscrimination provision of section 400.8(1) allows the commission to consider age in its hiring decisions, we do not need to decide whether the first sentence of section 400.8(1) authorizes maximum age hiring limits.

tion 400.8(1) permits it. If an irreconcilable conflict exists between a general provision and a special provision, the special provision "prevails as an exception to the general provision." Iowa Code § 4.7 (1991). Here, section 400.8(1) is a special provision as compared to section 601A.6 and section 400.17. Section 400.8(1) prohibits discrimination in a very narrow area—assessment of the physical and mental capabilities of applicants for civil service positions as police officers, police matrons and fire fighters. The prohibitions of section 400.17 are broader, encompassing all civil service employees with respect to any aspect of job performance, including appointment, promotion, demotion and discharge. Section 601A.6 is even broader, applying to all employers in the state, with some limited exceptions.

Because section 400.8(1) is the specific statute, it prevails. Therefore, only section 400.8(1) applies to the evaluation of the physical and mental abilities of applicants for civil service police officer positions.[3]

The ICRC argues that it makes no sense that the legislature would treat the hiring of police officers by civil service commissions differently than other hiring decisions. We disagree.

The legislature specifically forbade the use of sex and race (characteristics included in sections 601A.6 and 400.17) to judge physical abilities. Age also falls within the group of characteristics that have been used to judge one's physical fitness for employment. *E.g., Equal Employment Opportunity Comm'n v.*

*Missouri State Hwy. Patrol,* 748 F.2d 447 (8th Cir.1984) (maximum hiring age of thirty-two for highway patrol), *cert. denied,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985); *Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224 (5th Cir.1976) (maximum hiring age of 40 for bus drivers). Had the legislature wanted to forbid the use of age as well, age would logically have been included in section 400.8(1). The legislature may not have included age because it believed that civil service commissions should be able to use age in evaluating police applicants' physical abilities without the necessity of each commission justifying its action under the rigorous standards of the BFOQ exception.

■ Therefore, we hold that section 400.-8(1) allows the use of age in evaluating the physical and mental abilities of applicants for police officer positions. Similarly, it allows maximum age hiring limits for this purpose.

■ E. *Does section 400.8(1) create a statutory BFOQ?* We reject the City and Commission's position that the legislature intended to make age limits for police officers an *unassailable* BFOQ exception to sections 601A.6 and 400.17. As we have decided, section 400.8(1) operates independently of these other statutes. It does not legalize age discrimination by establishing age as a BFOQ. It simply sets up a different framework to determine whether age has appropriately been used as a factor in hiring police officers. We now turn to a discussion of this framework.[4]

3. The Commission and City have not challenged the ICRC's authority to hear a discrimination claim based on chapter 400. *Compare Hollinrake v. Monroe County,* 433 N.W.2d 696 (Iowa 1988) (a disability discrimination claim based on the substance of a rule enacted by the Iowa Law Enforcement Academy must be challenged under the judicial review procedures of chapter 17A; the ICRC did not have authority to hear the challenge as a civil rights action) *with Jew v. University of Iowa,* 398 N.W.2d 861 (Iowa 1987) (sexual harassment claim by associate professor may be pursued under chapter 601A; chapter 17A did not provide the exclusive means to challenge the University's action). Therefore, we take no position on this issue.

4. Montz and the ICRC argue that even if section 400.8(1) permits civil service commissions to use

age as a hiring criterion, the Commission must still justify its maximum age hiring limit as a bona fide occupational qualification. As discussed above, section 400.8(1) operates independently of section 601A.6. Therefore, section 601A.6 and its BFOQ exception do not apply.

The cases relied upon by the ICRC interpret the Age Discrimination in Employment Act (ADEA). *E.g., Johnson v. Mayor of Baltimore,* 472 U.S. 353, 105 S.Ct. 2717, 86 L.Ed.2d 286 (1985); *Equal Employment Opportunity Comm'n v. Missouri State Hwy. Patrol,* 748 F.2d 447 (8th Cir.1984), *cert. denied,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985); *Hoefelman v. Conservation Comm'n,* 718 F.2d 281 (8th Cir.1983). The ADEA prohibits age discrimination and contains a BFOQ exception; section 400.8(1) does neither. Therefore, these cases are not on point.

### V. Standard of Review of Commission's Rule.

■ Section 400.8(1) does not allow the Commission to establish hiring criteria based on age with impunity. Civil service commissions are held to the same standard as any other governmental agency. We will uphold their action only if (1) it is within the legislative grant of authority to civil service commissions, and (2) it is not arbitrary, capricious, or unreasonable. *Patch v. Civil Serv. Comm'n*, 295 N.W.2d 460, 464 (Iowa 1980). *Cf. Clinton Police Dep't Bargaining Unit v. City of Clinton*, 464 N.W.2d 875, 878 (Iowa 1991) (holding residency requirement for police officers adopted pursuant to section 400.17 was within city's authority and was reasonable).

■ The ICRC erred when it failed to apply the correct standard in judging the legality of the Commission's maximum hiring age. On judicial review, the district court correctly held that section 400.8(1) governed this case. However, the district court concluded that there was not substantial evidence to support a finding of illegal discrimination under this statute. We disagree. We believe there was sufficient evidence in the record to generate a factual question on whether the Commission's use of a maximum hiring age was arbitrary and unreasonable.

Montz introduced evidence of recent studies showing that one's muscular strength, reaction time and endurance result from one's disuse of the body rather than one's age. His medical expert supported the conclusions of these studies. This expert also testified that the City could accurately evaluate an applicant's physical abilities through physical testing. In addition, the police chief testified that an applicant's age did not give him any information about the applicant's physical fitness. The chief agreed that physical fitness depends on one's lifestyle and exercise rather than on age. Furthermore, the city attorney testified that the maximum hiring age chosen by the Commission was "tied to police pension benefits[,] ... not to [the applicant's] ability to do the job."

On this record, we cannot say as a matter of law that the Commission's use of a maximum hiring age was not arbitrary and unreasonable. Under these circumstances, we would ordinarily remand this case to the ICRC to give it an opportunity to reevaluate the evidence using the correct legal standard. *See Office of Consumer Advocate v. Iowa State Commerce Comm'n*, 432 N.W.2d 148, 156 (Iowa 1988). However, there is no need to do so here because we believe that the City proved as a matter of law that it would not have hired Montz even if his age had not been a consideration. We discuss that issue next.

### VI. Proximate Cause.

A. *Applicable law.* In cases arising under chapter 601A, an employer may avoid liability by "proving by a preponderance of the evidence that it would have made the same decision even if it had not considered the improper factor." *Landals*, 454 N.W.2d at 894. We will apply the same standard of causation here.

The Commission and City claim that the City would never have hired Montz because he did not meet the minimum educational requirements of the Commission. The ICRC found that Montz did meet these requirements and would have been hired because he was more qualified than the applicant chosen for the position. The district court concluded that there was not substantial evidence to support the ICRC's finding that Montz met the Commission's educational requirements and reversed. Montz and the ICRC claim error in this conclusion.

■ B. *Educational requirements for police officers.* The Commission had a rule requiring that all candidates for police officer positions "be certified by the Iowa Law Enforcement Academy [ILEA] or have a two[-]year Associate Degree in Law Enforcement or equivalent." It was undisputed that Montz had neither ILEA certification nor an associate (AA) degree in any subject area. He had been certified by a law enforcement program in Maine. Consequently, the fighting issue at trial was whether Montz's Maine certification was equivalent to ILEA certification or an AA degree.

The ICRC found that the phrase "or equivalent" in the educational standard referred to

an AA degree in law enforcement, not the ILEA certification. It found there was no equivalent for ILEA certification. There is substantial evidence in the record to support these findings, including Montz's own testimony that one state's certification was not the equivalent of another state's certification. The ICRC decided, however, that Montz's Maine certification and his three years of work experience as a police officer were the equivalent of a two-year degree in law enforcement. We agree with the district court that there was not substantial evidence to support this finding.

C. *Evidence of equivalency.* The "basic police school" that Montz attended lasted twelve weeks. The City's witnesses testified that they did not consider and had never considered twelve weeks of police training to be the equivalent of a two-year degree. Moreover, the evidence was uncontroverted that the Commission had never placed any applicant on the certified list who did not possess ILEA certification or at least an associate degree in law enforcement or in a related area such as criminal justice. The evidence also showed that since the educational requirement was adopted, the police chief had never hired anyone without a college degree.

The ICRC argues that its finding on equivalency is supported by evidence that on one occasion in 1988 the city clerk had failed to screen out an applicant who had neither ILEA certification nor an AA degree. This applicant, Charles Mollenhour, did have a certification from the Atlanta Police Academy based on his completion of a twenty-seven-week course.

The evidence conflicted on why the clerk allowed Mollenhour to compete for the vacancy. There was testimony that the Commission had established the educational requirement only a month earlier and the clerk made a mistake in not rejecting Mollenhour's application. There was also evidence that the clerk believed that the out-of-state certification was equivalent to ILEA certification.

Neither version of the evidence supports the ICRC's finding that out-of-state certification is the equivalent of an AA degree.

If the clerk's failure to screen out Mollenhour was a mistake, then this incident provides no support for finding that out-of-state certification was the equivalent of ILEA certification or an AA degree. If the clerk allowed Mollenhour to compete because he considered out-of-state certification the equivalent of ILEA certification, then this evidence would only support a finding that out-of-state certification is the equivalent of ILEA certification, not of an AA degree.

In summary, this incident is not evidence that the clerk, the Commission or the City ever considered out-of-state certification equivalent to an AA degree. Moreover, the uncontradicted evidence showed that the Commission did not include Mollenhour on the certified list because he did not meet the Commission's educational requirements. Consequently, the evidence upon which the ICRC relied does not support its finding that out-of-state certification is the equivalent of an AA degree.[5]

The ICRC also supported its conclusion that Montz's police training was equivalent to an AA degree by noting that Montz had three years of work experience in law enforcement. However, there is no evidence in the record to show that the Commission or the police chief had ever considered work experience to be the equivalent of formal education.

In essence, the ICRC focused on what it thought should be the equivalent of an AA degree rather than on what the Commission considered the equivalent of an AA degree. The question on causation is not who the fact finder thinks the employer should have hired, but who the employer would have hired had it not considered an impermissible factor.

We conclude there is not substantial evidence to support the ICRC's finding that the Commission would have considered Montz's twelve-week course in Maine and his three

5. The ICRC argues that the Commission's chair testified that Mollenhour's out-of-state certification was equivalent to an AA degree. However, the testimony cited by the ICRC is taken out of context. When the chair's testimony is read in its entirety, it is clear that he did not agree that Mollenhour met the educational requirements for the position.

years of work experience as equivalent to a two-year college degree in law enforcement. We are not bound by an agency finding not supported by substantial evidence. *Glowacki v. State Bd. of Medical Examiners,* 516 N.W.2d 881, 887 (Iowa 1994). Consequently, we hold that Montz was not educationally qualified for the position.

D. *Motivation for decision.* Montz also claims that the Commission and City cannot rely on this defense because there was substantial evidence that the city clerk rejected Montz's application based solely on Montz's age. He cites case law that an employer may not prevail in this defense "by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of the decision." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 252, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268, 289 (1989). Montz argues that the district court erred in reversing the ICRC on this *factual* issue.

Our review of the district court's decision, however, reveals that the district court did not reverse the ICRC on this factual issue. The district court agreed that age was the sole factor used by the city clerk to eliminate Montz from the hiring process. The district court disagreed with the ICRC in finding that ultimately the City would not have hired Montz because he failed to meet the educational requirements for the position. We have already decided above that there was not substantial evidence to support the ICRC's finding to the contrary.

Error by the district court, if any, was in concluding that this defense eliminated the City's liability altogether rather than merely reducing Montz's damage claims. *See Sabree v. United Bhd. of Carpenters & Joiners Local No. 33,* 921 F.2d 396, 404–05 (1st Cir. 1990) (where same decision would have been made later in the decision-making process based on a nondiscriminatory reason, recoverable damages are reduced). Neither the ICRC nor Montz challenged this legal conclusion on appeal. Therefore, we do not decide whether the facts support a partial defense rather than a total defense as the district court concluded.

■ E. *Conclusion.* We hold as a matter of law that Montz failed to meet the educational requirements for the job because (1) he did not have an AA degree or ILEA certification and (2) there is insufficient evidence to support a finding that he had the equivalent of an AA degree. Therefore, the Commission and the City carried their burden of proving that Montz would not have been hired even if age had not been a factor. For this reason, we affirm the district court's decision.

### VII. *Summary.*

The legality of using age as a factor in hiring decisions for civil service police positions is decided under section 400.8(1) if age is used to determine the physical abilities of the applicant. The antidiscrimination provisions of section 601A.6 and section 400.17 do not apply in these situations.

Therefore, Montz had the burden to prove that the maximum hiring age used by the Commission was arbitrary or unreasonable. There was sufficient evidence in this record to generate a factual question on this issue. Nevertheless, we do not reverse because the district court must be affirmed on another basis.

The district court correctly concluded there was insufficient evidence to support the ICRC's decision on causation. Specifically, the record will not support the ICRC's finding that Montz met the educational requirements of the Commission. Therefore, the district court properly held there was not substantial evidence to support the ICRC's conclusion that the City failed to prove that it would not have hired Montz even if age was not a factor. For this reason, the district court was correct to reverse the decision of the Iowa Civil Rights Commission and enter judgment in favor of the City and its civil service commission.

Because of our decisions on the applicability of section 400.8(1) and causation, it is unnecessary to consider the other errors raised by Montz and the ICRC.

**AFFIRMED.**