STATE OF IOWA, appellee, v. LA VERTA HAY, appellant.

No. 51467.

(Reported in 131 N.W.2d 452)

NOVEMBER 17, 1964.

Victor N. Kennedy, of Waterloo, for appellant.

Evan Hultman, Attorney General, Bruce M. Snell, Jr., Assistant Attorney General, and John Haughey, State Counsel, State Department of Social Welfare, for appellee.

PETERSON, J.—For several years prior to June 30, 1961, defendant maintained what was called a children's boarding home at 408 Vermont Street in Waterloo. Defendant did not

have a license as provided in section 237.2 of the Code for the maintenance of such a home. She had neglected, and at times had refused, to take out a license. In June of 1961 a case was filed by the State of Iowa against her, seeking to enjoin her from maintaining the home unless she did take out a license.

On June 30, 1961, the trial court enjoined defendant from maintaining said home without a license. She appealed the case to this court, and although record and arguments were not filed, the case, State v. Hay, was decided per curiam by this court in 1961 and appears in 111 N.W.2d 663. Defendant then did take out a license, but lost same later because of a charge of a criminal nature being filed against her. She then neglected to take out a license again and in 1964 the State of Iowa filed another action against her to enjoin her from maintaining the children's boarding home without a license. That case was tried to the court and an injunction was again issued. Defendant has appealed.

The claim of defendant is that the elements necessary for the maintenance of a children's boarding home under the provisions of section 237.2 are not present in her operation.

The type of home maintained by defendant is that she has parents bring small children under school age to her boarding home in the morning about six o'clock and they are kept there in the home until 5:45 p. m., when the parents call for them.

There is no conflict of fact as between the parties as to the matter of care and food, but defendant contends the record does not sufficiently support lodging. "Lodging" has been variously described. In 43 C. J. S., page 1137, a "lodger" is called "a person whose occupancy is a part of a house, and subordinate to, and in some degree under, the control of a landlord or his representative."

In 54 C. J. S., page 667, lodging is defined as "a place of rest for a night, or a residence for a time; temporary habitation."

In Pollock v. Landis, 36 Iowa 651, 652, we find this definition: "A lodger is one who lives at board, or in a hired room, or who has a bed in another's house for a night. Webster's Dictionary."

■ The stipulation of facts as to lodging is as follows: "Lodging. Limited in the ordinary case to the daytime hours from 6 a. m. to 5:45 p. m. excepting isolated or emergency cases the lodging will be overnight; but never for more than four consecutive nights."

This stipulation as to facts is sufficient to comply with the section 237.2 as to "lodging."

Chapter 237 of the Iowa Code with reference to children's boarding homes has been in the Code as far back as the 1927 Code, although amended from time to time. An amendment was adopted in the Sixtieth General Assembly, but the amendment did not affect the merits of the case at bar.

The section as amended by 60th G. A. is as follows:

"Any person who receives for care and treatment or has in his custody at any one time one (1) or more children under the age of sixteen (16) years unattended by parent or guardian, for the purpose of providing them with food, care, and lodging, except children related to him by blood or marriage, and except children received by him with the intent of adopting them into his own family, shall be deemed to maintain a children's boarding home. This definition shall not include any person who is caring for children for a period of less than thirty (30) days."

The remainder of the chapter outlines the procedure for the issuance, record, and posting of the license and provides authority on the part of the Board of Social Welfare to promulgate rules and regulations for the conduct of such homes, which rules, of course, must not be contrary to the statute.

Appellee contends at some length that the former proceeding of State v. Hay in 1961 was res adjudicata as to this proceeding. The former case does not answer the questions now raised before this court. Defendant did not file any printed record nor brief and argument. Our decision was based upon the transcript and was announced as a per curiam decision affirming the trial court. It is advisable that we consider the present case on its merits and on the basis of the situation as same pertains to defendant at this time.

The questions raised by defendant in the instant case and argued and considered at some length have not heretofore been

before this court except to the extent they appear in defendant's case in 1961.

There is a reason for providing protection for children under school age who for one reason or another cannot be and were not kept at home under parental care and guidance. In fact, the necessity is greater now than it ever has been before. Whether right or wrong, as a part of our civilization and general life conditions in this modern day, it seems that more and more mothers are leaving home and entering into business or professional life. Under such conditions the mother is not able to provide proper food, care and lodging for her child or children in the home at all times. It is fortunate in many respects when good homes can be established such as defendant's for the purpose of giving proper care to preschool children.

If we are living in such a manner that mothers cannot give their preschool children proper care and supervision, it is essential that the State provide supervision for the sake of the welfare of the children.

Such is the reason for chapter 237 and such is the reason for defendant securing a license from the State of Iowa to maintain a home of this type. With an average of 12 children in the home at all times it is imperative that public interest be shown and that supervision be had of the home and the children. The securing of a license makes it necessary and imperative that the Board of Social Welfare, through its experienced and proper employees, check on such homes and on the children in the homes to see that they receive proper food, care and lodging at all times.

Appellant contends vigorously that when the legislature adopted the chapter on "Children's Boarding Homes" it did not intend to establish homes to be licensed, such as defendant's home. Appellant contends the raising of the age limit in the original chapter from three years to fourteen years in 1929, and then to sixteen years in 1963, was some evidence that they did not have a special licensee in mind. However, the content of the original chapter and the somewhat slight changes made by the amendments are an evidence within themselves that the legislature had in mind a situation such as maintained by

defendant. As to the change of age limit it would appear that doubtless cases and occasions arise where an organization or an individual cares for children up to the age of sixteen.

When the words "without compensation" were eliminated from section 237.2 it had some significance in connection with establishment of a place of business rather than a temporary place of abode for some children. When in 1963 the amendment provided the chapter did not include persons caring for children for a period of less than thirty days it had some significance. It meant that if a family desired to leave their children with a neighbor or friend for less than thirty days it was not necessary that a license be secured.

When we carefully consider defendant's situation it appears she was included in the legislative intent under chapter 237. It appears from the first case filed by the State in 1961, and the instant case, that for several years she had, in fact, been maintaining a place of business. It is true that her day-time service is the more prevalent, but she has a program of overnight care, food and lodging. However, the structure of the situation and the maintenance of the business is such that there is no question about the intent of the legislature being that in cases such as the business maintained by defendant it is necessary that she secure a license in order that the Social Welfare Department may properly and carefully inspect and supervise the home from time to time.

Is there any significance in the use of the word "treatment"? We usually think of a doctor or nurse giving treatment. It has a broader meaning in accordance with "Webster's Dictionary." One definition when referring to "children" is "preventive guidance and corrective training". In caring for children under school age there are always the elements of guidance and training involved. This does not remove the statute from the category of necessity for social welfare supervision.

The case is affirmed.—Affirmed.

GARFIELD, C.J., and THOMPSON and LARSON, JJ., concur.

STUART, THORNTON and MOORE, JJ., concur specially.

SNELL, J., takes no part.

56

Hays, J., not sitting.

Stuart, J. (specially concurring)—I concur in the result but cannot agree with that portion of the opinion which indicates that daytime care for children of working mothers is sufficient to meet the lodging requirement of section 237.2.

Thornton and Moore, JJ., join in this special concurrence.