**STATE of Iowa, Appellant,**

v.

**JENNIE COULTER DAY NURSERY,**
**Appellee.**

No. 2–56305.

Supreme Court of Iowa.

May 22, 1974.

Richard C. Turner, Atty. Gen., Lorna Lawhead Williams, Special Asst. Atty. Gen., for appellant.

James M. Adams, Burlington, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, REYNOLDSON and HARRIS, JJ.

MOORE, Chief Justice.

The question on this appeal is whether defendant is operating a "children's boarding home" requiring a license under the provisions of Code chapter 237. The trial court denied the State injunctive relief primarily on the ground defendant was not furnishing "lodging" as required by section 237.2. It provides:

> "Any person who receives for care and treatment or has in his custody at any one time one or more children under the age of sixteen years unattended by parent or guardian, for the purpose of *providing them with food, care, and lodging,* except children related to him by blood or marriage, and except children received by him with the intent of adopting them into his own family, shall be deemed to maintain a children's boarding home. This definition shall not include any person who is caring for children for a period of less than thirty days." (Emphasis added).

In 1909 Miss Jennie Coulter opened a day nursery in Burlington. It was incorporated in 1934 under the name of The Jennie Coulter Day Nursery. It has always been operated as a charity, not a

business, by the Norman Circle of Kings Daughters and Sons. The members give generously of their time and efforts. Its current matron has been so employed for 19 years. Approximately 80 percent of its operating budget is received from the Burlington Community Chest. No funds are received from any governmental unit. The State Department of Social Services knew of its operation for at least 20 years before initiating action to close the nursery in 1970.

Working mothers leave children, up to age seven, for care at the nursery. It is open from 7:00 a. m. to 5:30 p. m., Monday through Friday. No overnight care has ever been offered or provided. During the day the children are given snacks and a hot lunch. Playtime activities, television and adjacent outdoor play area are furnished. At trial time a daily charge of 25 cents for the first child and 10 cents for a second child was made. Other than suggested minor changes the State made no complaint regarding the facilities or the care given.

The State assigns three propositions for reversal; (1) the trial court erred in finding "lodging" as used in section 237.2 does not include child care in day care facilities, (2) the trial court ignored the purpose and intent of the legislature in enacting the statute and (3) the trial court erred in not properly considering the interpretive rules promulgated by the Iowa Department of Social Services.

I. Both parties cite our holding in State v. Hay, 257 Iowa 51, 131 N.W.2d 452 in which we considered the meaning of "lodging" as used in section 237.2. We therein held that under the stipulated facts the child care business as operated by Hay required a license. In the opinion at page 55, 257 Iowa, page 454, 131 N.W.2d, this significant statement is made: "It is true that her daytime service is the more prevalent, but she has a program of overnight care, food and lodging."

In addition to the various descriptions and definitions of "lodging" and "lodger" set out in Hay, we note the following:

Webster's Third New International Dictionary defines "lodger" as "one that lives or dwells in a place: one that passes the night in a place * * *" and "lodging" as "a place to live * * * a place in which to settle or come to rest * * * sleeping accommodations * * *."

Black's Law Dictionary, Revised Fourth Edition, defines "lodgings" as "Habitation in another's house; apartments in another's house, furnished or unfurnished, occupied for habitation; the occupier being a 'lodger.'"

See also 25A Words and Phrases, Perm. Ed.

In Selvetti v. Building Inspector of Revere, 353 Mass. 645, 233 N.E.2d 915, 917, the court says: "'[L]odging' is 'accommodation in a house, especially in rooms for rent.'"

Jackson v. Engert, Mo.App.1970, 453 S. W.2d 615, 618 states: "* * * a person who is enjoying accommodations at an inn or hotel under such conditions of permanency as to make the place his home or residence for the time being is not a guest but a boarder, or a lodger * * *."

From these definitions it seems clear some permanency is required. However, the meaning of "lodging" may vary according to the purpose for which that word is used. 43 C.J.S. Innkeepers § 3.

Code section 4.1(2) provides: "Words and phrases shall be construed according to the context and the approved usage of the language; * * *."

II. Although conceding we determined in State v. Hay, supra, that "and" as used in "food, care and lodging" is used in the conjunctive, the State argues the trial court ignored the purpose and intent of the legislature in enacting that statute.

**582**

The intent of the legislature in enacting a statute is to be gathered from the statute itself. It is our duty to give it the interpretation its language calls for and not to speculate as to probable legislative intent apart from the wording used. We do not inquire what the legislature meant. We ask only what the statute means. Kruck v. Needles, 259 Iowa 470, 477, 144 N.W.2d 296, 301, and citations. See also rule 344(f)(13), Rules of Civil Procedure.

In determining the meaning of a statute all provisions thereof and the Act of which it is a part must be considered. We should endeavor to construe our statutes so that no part will be rendered superfluous. Further the legislature will be presumed to have inserted every part in a statute for a purpose and to have intended that every part shall be carried into effect. In support of each of the foregoing principles see Goergen v. State Tax Commission, Iowa, 165 N.W.2d 782, 786 and citations.

Like the trial court, we do not agree with the State's apparent position that the intent and purpose of section 237.2 is to require a license if food and care is provided. To so interpret the statute "lodging" would have no meaning and that word rendered superfluous.

III. The State's third assigned proposition is without merit. With respect to the weight given long-standing administrative interpretations of a statute we said in Consolidated Freightways Corp. v. Nicholas, 258 Iowa 115, 121, 122, 137 N.W.2d 900, 905:

" * * * [I]t must be remembered that the plain provisions of the statute cannot be altered by an administrative rule or regulation, no matter how long it has existed or been exercised by administrative authority. Clarion Ready Mixed Concrete Co. v. Iowa State Tax Commission, 252 Iowa 500, 507, 107 N.W.2d 553, 558, and citations. To permit a commission or board to change the law by giving to

the statute or Act an interpretation or construction of which its words are not susceptible would be a departure from the meaning expressed by the words of the statute. Hindman v. Reaser, 246 Iowa 1375, 72 N.W.2d 559. * * *."

See also Nishnabotna Valley Rural Elec. Coop. v. Iowa P. & L. Co., Iowa, 161 N.W.2d 348, 352.

This case is readily factually distinguishable from State v. Hay, supra, 257 Iowa 51, 131 N.W.2d 452. In Hay the State established overnight lodging was offered and furnished. Here it is undisputed no lodging within the meaning of the statute requiring a license was even suggested.

We agree with the judgment of the trial court.

Affirmed.