Craig S. **MILLER**, Sr., **Karen Sue Miller, Dani Lee Miller, and Craig S. Miller, Jr., Appellants,**

v.

**WESTFIELD INSURANCE COMPANY, Appellee.**

No. 98–73.

Supreme Court of Iowa.

Jan. 20, 2000.

Rehearing denied March 13, 2000.[†]

† LARSON, J., taking no part.

Richard A. Bartolomei of Bartolomei & Lange, P.C., Des Moines, for appellants.

J. Michael Weston and Brenda K. Wallrichs of Moyer & Bergman, P.L.C., Cedar Rapids, for appellee.

TERNUS, Justice.

This case concerns the enforceability of an owned-but-not-insured exclusion in the uninsured motorists (UM) coverage of a motor vehicle liability policy. The trial court held that the exclusion was enforceable and precluded the plaintiffs' recovery under the UM coverage. We agree and so affirm.

I. *Background Facts and Proceedings.*

The facts underlying this case were undisputed by the parties. The plaintiff, Craig S. Miller, Sr., was injured in an accident caused by an uninsured motorist. At the time of the accident, Miller was riding a motorcycle that he owned and had insured through Midwest Mutual Insurance Company. The Midwest policy did not include UM coverage, however, because Miller had expressly rejected, in writing, Midwest's offer of such coverage.

Miller also owned a pickup that he had separately insured under a liability policy issued by the defendant, Westfield Insurance Company. The Westfield policy included UM coverage. This action was

commenced by Miller, his wife, Karen Sue Miller, and his children, Dani Lee Miller and Craig S. Miller, Jr., to recover benefits under the UM coverage of the Westfield policy.

Westfield claimed that the following exclusion in its policy precluded any recovery by the plaintiffs:

> We do not provide Uninsured Motorists Coverage for **bodily injury** sustained by any person:
>
> 1. While **occupying**, or when struck by, any motor vehicle owned by you or any **family member** which is not insured for this coverage under this policy.

This exclusion is commonly referred to as an owned-but-not-insured exclusion. The plaintiffs did not dispute that the exclusion, if applied, would prevent them from recovering under the UM coverage of the Westfield policy. They argued instead that the exclusion was unenforceable under our decision in *Lindahl v. Howe,* 345 N.W.2d 548 (Iowa 1984), which held that under the facts of that case the owned-but-not-insured exclusion was contrary to Iowa's uninsured motorist statute, Iowa Code chapter 516A, and therefore was unenforceable. The district court held that *Lindahl* was distinguishable because Miller, unlike the insured in *Lindahl,* had expressly rejected UM coverage in the policy insuring the vehicle involved in the accident. Accordingly, the court applied the exclusion and ruled that the plaintiffs were not entitled to recover under the Westfield policy.

The plaintiffs appealed the district court's decision. Our review is for correction of errors of law. *See* Iowa R.App. P. 4.

## II. *General Principles Governing Statutory Interpretation.*

As we have already mentioned, there is no disagreement that the owned-but-not-insured exclusion contained in Westfield's insurance policy precludes Miller from re-

covering under the policy, *if* the exclusion is enforceable under chapter 516A, Iowa's uninsured and underinsured motorist statute. The enforceability of the exclusion under chapter 516A becomes an issue because we have repeatedly held that the terms of this statute "form a basic part of the policy." *Hollingsworth v. Schminkey,* 553 N.W.2d 591, 595 (Iowa 1996); *accord Hornick v. Owners Ins. Co.,* 511 N.W.2d 370, 372 (Iowa 1993). Consequently, the resolution of this case depends on the legislative intent encompassed in chapter 516A.

In determining legislative intent, we apply well-settled rules of statutory construction:

> In construing statutes, our goal is to determine and give effect to the legislature's intention. We seek a reasonable interpretation which will best effectuate the purpose of the statute and redress the wrongs the legislature sought to remedy. We will consider all parts of an enactment together and will not place undue importance on any single or isolated portion.

*Mewes v. State Farm Auto. Ins. Co.,* 530 N.W.2d 718, 722 (Iowa 1995) (citations omitted). With these principles in mind, we now examine chapter 516A to ascertain the legislature's intent.

## III. *Legislative Intent as Shown by the Uninsured Motorist Statute.*

The fundamental goal of the UM statute is to provide insureds with insurance protection when injured as a result of the fault of an uninsured motorist. *See* Iowa Code § 516A.1 (1997) (stating that no motor vehicle liability insurance policy may be issued in this state unless uninsured motorist coverage is provided in such policy with limits at least equal to the liability limits required under Iowa Code section 321A.1(10)); *see also Douglass v. American Family Mut. Ins. Co.,* 508 N.W.2d 665, 667 (Iowa 1993) (stating that the purpose of UM *coverage* is "to provide to the victim of an accident the same protection

that the victim would have had if the negligent tortfeasor had had minimum insurance coverage"). The goal of providing UM coverage to Iowa insureds is not, however, without its limitations. Section 516A.1 specifically allows an insured to reject UM coverage, if done so in writing. *See* Iowa Code § 516A.1 ("However, the named insured may reject all of such coverage...."). In effect, then, Iowa's UM statute does not implement mandatory UM coverage; it merely mandates that such coverage be offered to all insureds purchasing motor vehicle liability insurance.

Once an insured chooses to purchase UM coverage, Iowa Code section 516A.2(1) becomes relevant.[1] That statute allows insurers to limit UM coverage to the minimum limits prescribed by section 321A.1(10). *See* Iowa Code § 516A.2(1). More important, it permits insurers to include in UM coverage "terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits." *Id.* We first had an opportunity to interpret this provision of chapter 516A in the *Lindahl* case, which we now discuss.

### IV. *Lindahl Decision.*

■ In *Lindahl*, this court considered the enforceability of an owned-but-not-insured exclusion contained in the insured's UM coverage provided under his automobile policy. 345 N.W.2d at 549. As in the present case, at the time of the accident the insured was operating a motorcycle he owned, but had not insured under the auto policy. *Id.* We first determined that "[t]he conditions for mandatory coverage specified in section 516A.1 [were] present." *Id.* at 550. We then examined whether the

exclusion was, nonetheless, authorized under section 516A.2(1). *Id.* at 551. We specifically focused on the statutory language permitting exclusions "which are designed to avoid duplication of insurance or other benefits." *Id.*

In interpreting this language, this court noted that the record before it lacked any evidence of the "insurance or benefits the exclusion is designed to avoid duplicating." *Id.* The court concluded, therefore, that the case was distinguishable from prior cases wherein the "potential duplication identified in the policy was found to exist." *Id.* This distinction was important to the court because it "believe[d] our legislature intended only to authorize insurers to exclude coverage for contingencies in which duplication *actually occurs.*" *Id.* (emphasis added). We explained:

> The broad mandate of coverage under section 516A.1 would mean little if an insurer could defend any exclusion of coverage by asserting it was designed to prevent a possible duplication of insurance or other benefits without regard to whether such duplication occurs.

*Id.*

The district court did not apply *Lindahl* to the case before us, concluding that it was distinguishable because here the insured expressly waived UM coverage under his motorcycle liability policy, a fact not apparent from the record before the court in *Lindahl.* We find it unnecessary, however, to consider whether this fact renders the *Lindahl* decision inapplicable here. Upon our examination of *Lindahl*, we conclude it was erroneously decided and should be overruled.

---

1. This statute states in pertinent part:

   [N]othing contained in this chapter shall be construed as requiring forms of coverage provided pursuant hereto, whether alone or in combination with similar coverage afforded under other automobile liability or motor vehicle policies, to afford limits in excess of those that would be afforded had the insured thereunder been involved in an

   accident with a motorist who was insured under a policy of liability insurance with the minimum limits for bodily injury or death prescribed in subsection 10 of section 321A.1. Such forms of coverage may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits.

   Iowa Code § 516A.2(1).

■ Our first concern with *Lindahl* is our failure to apply a fundamental rule of statutory construction: "a statute [will not be construed] to make any part of it superfluous unless no other construction is reasonably possible." *Civil Serv. Comm'n v. Iowa Civil Rights Comm'n*, 522 N.W.2d 82, 86 (Iowa 1994); *accord Iowa Auto Dealers Ass'n v. Iowa Dep't of Revenue*, 301 N.W.2d 760, 765 (Iowa 1981). Accordingly, "[w]e presume the legislature included every part of a statute for a purpose, and intended each part be given effect." *George H. Wentz, Inc. v. Sabasta*, 337 N.W.2d 495, 500 (Iowa 1983), *overruled on other grounds by Henriksen v. Younglove Constr.*, 540 N.W.2d 254, 258 (Iowa 1995); *accord State v. Jennie Coulter Day Nursery*, 218 N.W.2d 579, 582 (Iowa 1974). In addition, the *Lindahl* decision violates the rule of statutory construction quoted earlier in this opinion: the court "will not place undue importance on any single or isolated portion" of a statute. *Mewes*, 530 N.W.2d at 722.

The legislature stated in section 516A.2(1) that exclusions "which *are designed to* avoid duplication of insurance or other benefits" are permissible. Iowa Code § 516A.2(1) (emphasis added). In *Lindahl*, this court simply read the words "are designed to" out of the statute. By holding that an exclusion is permissible under the statute only when *actual* duplication occurs, this court effectively rewrote the statutory language to read: "Such forms of coverage may include exclusions which avoid duplication of insurance or other benefits." If we presume that the legislature "included every part of a statute for a purpose, and intended each part be given effect," *Sabasta*, 337 N.W.2d at 500, then we must give meaning to the words "are designed to."

■ We assume the legislature intends the words it uses in a statute to be given their common and ordinary meaning when the words are not otherwise defined by the legislature. *See State v. Walker*, 574 N.W.2d 280, 289 (Iowa 1998). Here, the common meaning of the word "design" is "to plan or have in mind as a purpose: INTEND, PURPOSE, CONTEMPLATE." Webster's Third New International Dictionary 611 (unabr. ed.1993). Using this common meaning of the language chosen by the legislature, there is no reasonable interpretation of the provision in question other than that the General Assembly meant to authorize exclusions that are *intended* to or have the *purpose* of avoiding duplication of benefits. Requiring the *actual* duplication of benefits is simply contrary to the language used by the legislature.

An apparent rationale for our decision in *Lindahl* was our observation that "the broad mandate of coverage under section 516A.1 would mean little if an insurer could [rely on an exclusion] designed to prevent a possible duplication of insurance . . . without regard to whether such duplication actually occurs." 345 N.W.2d at 551. This rationale is flawed for two reasons. First, *coverage* is not mandated by section 516A.1, only the *offer* of such coverage. If the legislature had truly wanted to mandate UM protection for all insureds, it simply would have eliminated the provisions of chapter 516A allowing insureds to reject such coverage and allowing insurers to include certain exclusions to and limitations on such coverage. Thus, *Lindahl* is based on a faulty premise—that the sole intent of the legislature in chapter 516A was to mandate UM coverage. Second, the quoted rationale gives overriding importance to one part of the statute, which is contrary to our established rules of statutory construction. The legislature's desire to provide insureds with the opportunity to purchase UM coverage must be read in conjunction with section 516A.2(1), which permits exclusions "designed to" avoid duplication of benefits.

In summary, under a proper application of the rules of statutory interpretation, we conclude that actual duplication of benefits is not required by section 516A.2(1). Our imposition of such a requirement in *Lindahl* was clearly wrong. *See generally*

*State v. Burgs,* 479 N.W.2d 323, 324 (Iowa 1992) ("When a statute's terms are unambiguous and its meaning plain, there is no room for second-guessing legislative intent.").

To make matters worse, we have not required an actual duplication of benefits when an owned-but-not-insured exclusion is contained in underinsured motorists (UIM) coverage. We have said that, in the context of UIM coverage, there is "no duplication of benefits until the victim has been fully compensated." *McClure v. Northland Ins. Co.,* 424 N.W.2d 448, 450 (Iowa 1988) (applying section 516A.2(1)'s duplication-of-benefits provision). Yet in *Kluiter v. State Farm Mutual Automobile Insurance Co.,* 417 N.W.2d 74 (Iowa 1987), we upheld an owned-but-not-insured exclusion with no discussion of whether the insured had been fully compensated for his injuries. 417 N.W.2d at 76. Instead, we merely found *"potential* duplication." *Id.* (emphasis added); *see also Hornick,* 511 N.W.2d at 374 (holding the UIM policy provision at issue "may be viewed as *an attempt* to avoid duplication of insurance coverage and is therefore permitted under Iowa Code section 516A.2" (emphasis added)).

Our inconsistent application of the statute's duplication-of-benefits provision finds no support in the language of the statute; either section 516A.2(1) requires *actual* duplication, or it does not. As we have explained, based on the words used by the legislature, we hold that actual duplication is not required under section 516A.2(1).

We are sensitive to the possibility that the insurance industry and the public may have relied on our *Lindahl* decision in considering their insurance sales and purchases. Clearly, adherence to precedent has value. *See Kersten Co. v. Department of Social Servs.,* 207 N.W.2d 117, 121 (Iowa 1973) ("Stare decisis is a valuable legal doctrine which lends stability to the law. . . ."). On the other hand, stare decisis does not prevent the court from reconsidering, repairing, correcting or abandoning past judicial announcements when error is manifest, including error in the interpretation of statutory enactments. *See Lehigh Clay Prods., Ltd. v. Iowa Dep't of Transp.,* 545 N.W.2d 526, 528 (Iowa 1996); *Young v. City of Des Moines,* 262 N.W.2d 612, 615 (Iowa 1978), *overruled on other grounds by Parks v. City of Marshalltown,* 440 N.W.2d 377, 379 (Iowa 1989). Thus, stare decisis "should not be invoked to maintain a clearly erroneous result." *Kersten Co.,* 207 N.W.2d at 121; *accord State v. Johnson,* 257 Iowa 1052, 1056, 135 N.W.2d 518, 521 (1965) (holding the court has a duty to correct erroneous past decisions). It is especially critical that stare decisis not shield court-created error from correction when the error is related to a matter of continuing concern to the community. *See People v. Anderson,* 43 Cal.3d 1104, 240 Cal.Rptr. 585, 742 P.2d 1306, 1331 (Cal.1987). *See also Henriksen,* 540 N.W.2d at 258–61 (overruling fourteen-year-old case interpreting workers' compensation statute governing the compensability of an injury occurring outside the territorial limits of Iowa).

This case presents such a situation. To paraphrase our discussion in *Stuart v. Pilgrim,* 247 Iowa 709, 74 N.W.2d 212 (1956), wherein we overruled long-established precedent, our holding in *Lindahl* "proceed[ed] upon a wrong principle, [was] built upon a false premise, and arriv[ed] at an erroneous conclusion." 247 Iowa at 714, 74 N.W.2d at 216. Therefore, the doctrine of stare decisis does not protect that holding from correction. Accordingly, our decision in *Lindahl* is overruled.

## V. *Enforceability of Exclusion.*

Having concluded that actual duplication is not required, we now examine whether the exclusion upon which Westfield relies was "designed to avoid duplication of insurance." *See* Iowa Code § 516A.2(1). The record shows that Miller purchased a liability policy on his motorcycle but rejected the insurer's offer of UM

coverage. Clearly, if Miller had purchased UM coverage under his motorcycle policy, there would have been a duplication of UM coverage. *See LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 311 (Iowa 1998) (enforcing owned-but-not-insured exclusion in UM coverage in automobile policy in which same coverage was provided under insured's motorcycle policy). It was this anticipated duplication that the exclusion was intended to avoid. Under these circumstances, we conclude the exclusion satisfies the statutory requirement that it be "designed to avoid the duplication of insurance." *See* Iowa Code § 516A.2(1). Consequently, the exclusion is enforceable, and the trial court did not err in upholding the validity of the owned-but-not-insured exclusion in Westfield's UM coverage.

**AFFIRMED.**

All justices concur except CADY, LARSON, and SNELL, JJ., who dissent.

CADY, Justice (dissenting).

I respectfully dissent. The majority overrules *Lindahl* by concluding it failed to properly apply the rules of statutory construction to accurately discern the legislative intent of sections 516A.1 and 516A.2. I not only disagree with this conclusion, but find it problematic that the majority would overrule a case involving statutory interpretation that has been accepted as a part of our law for well over a decade.

Within the construct of our three branches of government, there exists a fundamental principle that it is the prerogative of the legislative branch to declare the law, and the obligation of the judicial branch to interpret the law. *See Slockett v. Iowa Valley Community Sch. Dist.*, 359 N.W.2d 446, 448 (Iowa 1984). There is an equally fundamental principle that the goal of judicial statutory construction is to ascertain and give effect to the intention of the legislature. *Wellsburg–Steamboat Rock Community Sch. Dist. v. Iowa Dep't of Educ.*, 523 N.W.2d 749, 751 (Iowa 1994).

A judicial body which does anything more risks infringing upon the important balance of governmental power that lies at the heart of our democratic society. Courts, indeed, have broad powers but these powers must not intrude into matters properly left to the legislative or political arena. Charles D. Breitel, *The Lawmakers*, 65 Colum. L.Rev. 749, 777 (1965). In overruling *Lindahl*, I believe the majority has improperly assumed the legislative lawmaking role.

Chapter 516A was originally enacted in 1967. It required motor vehicle liability insurers in this state to provide coverage "for the protection of persons insured" under the policy for injuries caused by uninsured or hit and run motorists, unless such coverage was specifically rejected by the insured. Iowa Code § 516A.1. It further permitted the insurer to place exclusions from such coverage in the policy "which are designed to avoid duplication of insurance or other benefits." *Id.* § 516A.2. Our legislature amended section 516A.1 in 1980 to expand the required coverage to include underinsured motorist coverage.

*Lindahl* was decided in 1984. In *Lindahl*, we held that an owned-but-not-insured exclusion in an automobile policy violated the mandatory coverage requirement in section 516A.1 when the insured under an automobile policy was injured while occupying a motorcycle which was owned by the insured but not insured under the policy. We recognized this holding to be the majority rule of courts in other jurisdictions that had addressed the question under similar statutes. *Lindahl*, 345 N.W.2d at 550.

During the fifteen years that have come and gone since *Lindahl*, the statutory language interpreted in *Lindahl* has remained unchanged. During the same time, however, other language in the statute was amended and rewritten by our legislature following our interpretation. In 1990, for example, we refused to enforce antistacking provisions in a policy of insurance as violative of the protection giv-

en to insureds under section 516A.1. *Hernandez v. Farmers Ins. Co.*, 460 N.W.2d 842, 845 (Iowa 1990). In direct response to our interpretation of section 516A.1 in *Hernandez*, our legislature promptly rewrote section 516A.2 to specifically abrogate our interpretation of the statute in *Hernandez*. It declared that "enforcement of the antistacking provisions contained in a motor vehicle insurance policy does not frustrate the protection given to an insured under section 516A.1." *See* Iowa Code § 516A.2(1).

Our history is replete with examples, like *Hernandez*, of the legislative response to judicial interpretation of statutes. Outside a constitutional challenge, the legislative branch is not required to live with a judicial interpretation of its statute. If the legislature disagrees with our interpretation of law it enacted, it has the prerogative to change or rewrite the law to conform to its intention. Consequently, we recognize that judicial construction given to a statute which is left undisturbed by the legislature over a period of years gives rise to the inference that the legislative branch has accepted our judicial interpretation. *State v. Anderson*, 517 N.W.2d 208, 214 (Iowa 1994). Furthermore, we assume that when the legislature re-enacts a statute, as was done to section 516A.2 following *Hernandez*, it was aware of our prior decisions interpreting the statute and would have specifically altered our interpreted intention if it did not agree with it. *State v. Stueve*, 260 Iowa 1023, 1027, 150 N.W.2d 597, 599–600 (1967); *see also Young v. City of Des Moines*, 262 N.W.2d 612, 615 (Iowa 1978), *overruled on other grounds by Parks v. City of Marshalltown*, 440 N.W.2d 377, 379 (Iowa 1989) (legislature's re-enactment of statute, without pertinent change, following judicial interpretation may be presumed adopted or approved by the legislature).

Although we follow a host of rules to aid in our efforts to define the legislative intent behind a statute, the best gauge of our attempt to accomplish this goal, in the final analysis, is the reaction to our interpretation by those who write the law. A statute that has remained unchanged for well more than a decade after our interpretation of the statute reveals our legislature has concurred with our interpretation. If we had missed the mark in *Lindahl*, as the majority now claims, our legislature would have told us long ago. Consequently, we have no business under the framework of our powers and the principles which guide the exercise of those powers to change our interpretation now. It does an injustice to the venerable and essential concept of stare decisis, and violates those corresponding principles that give stability, strength, and confidence to our judicial process.

The majority attempts to shield itself from this criticism by rallying behind another legal principle that courts have an obligation to abandon past judicial decisions when they are found to be wrong. Yet, this principle is better applied to cases involving judge-made law, not those which involve statutory interpretation. *See Kersten Co. v. Dep't of Social Servs.*, 207 N.W.2d 117, 118 (Iowa 1973). Moreover, it is a principle that only applies when our past decision is found to be clearly erroneous, not when an old debate is revived without an accompanying change in the grounds or circumstances which justified the original decision. *Id.* at 121; *see also Young*, 262 N.W.2d at 615 (stare decisis is no bar where error is manifest); *Stuart v. Pilgrim*, 247 Iowa 709, 714, 74 N.W.2d 212, 215–16 (1956) (interpretation, once made, should be overturned only for most cogent reasons). *Lindahl* involved a case of statutory interpretation, and cannot fairly be characterized as clearly erroneous. Not only is it the established law of this state and the majority rule nationwide, but it has been followed by other jurisdictions since the decision was made. *See Hillman v. Nationwide Mut. Fire Ins. Co.*, 758 P.2d 1248, 1251 (Alaska 1988) (upholding exclusion violates public policy of protective

UM/UIM statutory scheme); *Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 697 P.2d 684, 687 (Ariz.1985) (same); *Bray v. North Carolina Farm Bureau Mut. Ins. Co.*, 341 N.C. 678, 462 S.E.2d 650, 653 (N.C.1995) (same); *Dullenty v. Rocky Mountain Fire & Cas. Co.*, 111 Idaho 98, 721 P.2d 198, 208 (Idaho 1986) (Bistline, J., dissenting) (same).

The majority has simply beefed-up the dissent originally voiced in *Lindahl.* It adds nothing new to the debate, and can identify no change in conditions to justify a departure from our precedent. Furthermore, the criticism lodged by the majority to the framework of *Lindahl* is unfair.

*Lindahl* did not read the word "designed" out of section 516A.2, nor did it mischaracterize the policy of section 516A.1 by describing it as a "broad mandate of coverage." *Lindahl* properly observed that the legislature had a purpose in enacting section 516A.1 which would be lost if insurers could use exclusions in the manner now articulated by the majority. Thus, *Lindahl* properly observed that there must be some actual, not fanciful, potential for duplication of insurance or benefits, which the exclusion is designed to avoid. *See Kluiter v. State Farm Mut. Auto. Ins. Co.*, 417 N.W.2d 74, 76–77 (Iowa 1987).

The majority also declares *Lindahl* was built on a faulty premise that section 516A.1 mandated uninsured coverage. The majority claims that insurers must only "offer" coverage under section 516A.1, which does not constitute a mandate. This, in my view, is only a matter of semantics and simply an artful diversion from the primary goal of statutory interpretation.

A mandate is a requirement, and section 516A.1 unmistakably requires motor vehicle insurance policies delivered or issued for delivery in this state to contain uninsured motorist protection. In the legalese of contract law, this may be viewed as a term of an offer, but it is a mandatory term. Furthermore, insurance policies are contracts of adhesion in which the terms of the policy are established by the insurer in conjunction with certain legislative requirements. The statute makes it clear that uninsured motorist coverage is required unless specifically rejected by the insured. There is no dispute about this, and it is wrong for the majority to transform it into a faulty premise. The statute mandates the insurer to include the coverage, and only the insured has the ability to elect not to accept it. This is what is meant by mandatory coverage, and *Lindahl* meant nothing more.

The statutory language at issue in this case is found in section 516A.2. This section allows insurers to exclude uninsured motorist coverage by including exclusions in the policy "which are designed to avoid duplication of insurance or other benefits." The majority concludes this not only means exclusions designed to prevent the insured from obtaining duplicative uninsured motorist benefits, but also exclusions that deny coverage to the insured when there would have been duplicative coverage if the insured had purchased duplicative coverage. This interpretation guts the very policy behind section 516A.1 and permits the insurer to exclude the mandatory coverage if the insured is injured while operating an owned–but–not–insured vehicle. The statute, however, does not contain such a limitation. To the contrary, section 516A.1 mandates coverage "for the protection of *persons* insured." It does not limit this coverage depending on whether the insured *person* was occupying an insured or uninsured vehicle. The uninsured coverage mandated by section 516A.1 follows the person, not the covered vehicle. Thus, it is the majority, not *Lindahl,* which takes liberties with the rules of statutory interpretation.

The "owned-but-not-insured" exclusion in the insurance policy in this case is designed to exclude uninsured motorist coverage for injury to the insured while occupying an owned-but-not-insured vehicle.

Such an exclusion is invalid under section 516A.1 unless "designed to avoid the duplication of insurance or other benefits" under section 516A.2.

On its face, the exclusion has nothing to do with avoiding the duplication of insurance or benefits. However, a duplication of insurance benefits could occur if the owned-but-not-insured vehicle was insured for uninsured motorist coverage under another policy of insurance. Under this situation, the design of the exclusion would include avoiding the "duplication of insurance or other benefits." However, a duplication of uninsured motorist insurance could not arise if the owned-but-not-insured vehicle was not insured for uninsured motorist coverage.

Notwithstanding, the majority satisfies the statutory duplication of insurance requirement by concluding duplication would have occurred *if* the insured had purchased uninsured motorist coverage. In doing so, the statutory requirement is no longer about permitting an insurer to use an exclusion to avoid the duplication of insurance, but permitting an insurer to use the exclusion to create a duplication of insurance based on the failure of the insured to purchase duplicative insurance. This was not the design of the legislature. The legislature knew multiple insurance policies often come into play, and permitted the exclusion to avoid the duplication of uninsured motorist benefits that would otherwise occur when more than one policy of insurance provides uninsured motorist coverage. The majority has now not only eliminated the need for actual duplication of uninsured motorist coverage, but the very need for any duplication at all. This is in direct contravention of the legislative mandate for uninsured motorist coverage.

Stare decisis provides the needed stability in the law, which business and individuals alike rely upon to guide their decisions. *See Pilgrim*, 247 Iowa at 714, 74 N.W.2d at 216 ("Legal authority must be respected; not because it is venerable with age, but because it is important that courts, and lawyers and their clients, may know what the law is and order their affairs accordingly.") I am confident the insurance industry, over the last fifteen years, has adjusted its premiums to accommodate the articulated policy of section 516A.1, as interpreted by *Lindahl*, and the premiums paid by insured persons reflect the possibility that an insured may be injured while occupying an owned-but-not-insured vehicle. Likewise, I must assume, as we do in other areas of the law, that the insured in this case understood the law as interpreted by *Lindahl*. Miller obtained uninsured motorist coverage when he purchased the Westfield policy. This coverage, under *Lindahl*, followed him whether he was occupying an insured or uninsured vehicle. Thus, it would not have made economic sense for him to purchase duplicative uninsured motorist coverage, and pay an additional premium, when he subsequently obtained insurance from Midwest. Miller had a right to rely on the law in purchasing insurance, and we have done a disservice to him by changing that law. We have also done a disservice to the important principles which guide the very exercise of our powers. I am therefore compelled to depart from the majority, and voice my dissent.

LARSON and SNELL, JJ., join this dissent.