# In the Iowa Supreme Court

No. 24–1752

Submitted November 4, 2025—Filed December 31, 2025
Amended January 6, 2026

**Alex Butter** and **Sydney Stodola,**

Appellants,

vs.

**Midwest Property Management IC, LLC, KMB Property Management,** and **Ruby Investments, LLC,**

Appellees.

Appeal from the Iowa District Court for Johnson County, Christopher Foster, magistrate, and Chad Kepros, judge.

Tenants appeal a district court ruling that rejected some of their claims against their landlord for common law trespass, challenging the number of trespasses that occurred, the damages award, and the decision not to award attorney fees. **Affirmed.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Christopher Warnock (argued) of The Iowa Landlord Tenant Project, Iowa City, for appellants.

Patrick J. Ford (argued) of Pugh Hagan Prahm, PLC, Coralville, for appellees.

**Christensen, Chief Justice.**

A pair of tenants sued their landlord in small claims court for common law trespass after becoming frustrated with the number of times that their landlord showed their rental unit to prospective tenants for the next rental period. The magistrate concluded that the tenants demonstrated four occasions of common law trespass—two of which occurred on the same day—and awarded the cost of three days of the tenants' rent as damages. It declined to award the tenants the attorney fees that they requested under Iowa Code section 562A.12(8) (2022), reasoning that the statute did not apply. The district court largely agreed, only differing in opinion on the damages award. Instead of awarding three days of the tenants' rent as damages, it calculated that the tenants were entitled to three-and-a-half days' rent, adding an additional half-day's rent for the second trespass that occurred on the same day.

On appeal, we affirm the district court. The tenants' claim that the district court should have found additional trespasses because the tenants were unaware that they could withhold consent for the landlord to enter lacks merit. Consent is based on what the tenants' actions led the landlord to believe, not the tenants' intent. Additionally, the record provides a reasonable basis for the district court's damages award, and the district court correctly concluded that Iowa Code section 562A.12(8) does not authorize attorney fees in this case because that section is limited to rental deposit disputes.

**I. Background Facts and Proceedings.**

Alex Butter and Sydney Stodola (tenants) rented a duplex in Iowa City from Ruby Investments, LLC, and Midwest Property Management, IC, LLC, doing business as KMB Property Management (KMB), from September 2022 through July 2023. The tenants moved in on September 15, 2022, and KMB began

showing their unit to prospective tenants shortly thereafter for the next rental period. The parties' leasing agreement stated,

> Landlord shall have the right, subject to Resident's consent, which consent shall not be unreasonably withheld, to enter the rental unit in order to . . . exhibit the Rental Unit to prospective or actual . . . residents . . . . Except in case of emergency or having Resident's consent, Landlord shall give Resident at least twenty-four hours' notice of Landlord's intent to enter, in which case Landlord may enter only at reasonable times.

In November, Stodola expressed concerns to KMB about the number and unpredictability of the showings. In response, KMB notified Stodola through email and voicemail that it was implementing a schedule to show the unit. The email stated, "[W]e will now be scheduling showings on Tuesdays, Wednesdays and Fridays between the hours of 1:30-4:30." Nevertheless, some of KMB's subsequent requests to enter the unit with prospective tenants occurred outside of this timeframe. While the tenants often allowed KMB to enter the property outside its declared timeframe, they did so only when KMB gave the requisite twenty-four-hour notice. They refused consent and did not allow KMB to enter on four occasions when KMB attempted to show the unit without prior notice.

Frustrated with this arrangement, the tenants filed suit in small claims court on April 9, 2023, alleging that KMB "repeatedly entered [the] premises[,] causing multiple trespasses."[1] They requested $250 in damages for each trespass and attorney fees. Both tenants testified, but only Stodola's testimony is relevant to the trespass claims.

According to Stodola, KMB conducted forty-eight showings of the unit, and twelve of them were outside of the times that KMB had declared it would show the property in the November email. She testified that twelve of the showings

---

[1] The tenants also alleged that KMB breached the lease agreement and violated Iowa Code section 562A.23 based on the tenants' payment of the water bills for both their unit and the neighboring unit. This issue is not on appeal.

were without notice, and there were four additional times when she did not let KMB enter for showings because they arrived without notice. The tenants and KMB each entered exhibits documenting the showings, including a breakdown of the showings done with and without prior notice, and KMB's November email discussing its schedule for showing the tenants' unit.

Stodola, who worked from home, testified that she would kennel her cat and block off her calendar to limit disruptions to her work during scheduled showings. She also had to reschedule meetings because of the frequent showings. Stodola testified that she felt she had no choice but to allow KMB's entry when they provided her with a twenty-four-hour notice of the showings, but she did have a choice when they arrived without notice and would not let them in when this occurred.

KMB property manager Griffin Karr also testified. When asked whether the forty-eight showings were excessive, Karr explained that KMB manages over 200 properties and has a dozen or so that require a lot of showings. He did not know why some of the showings occurred outside of the times outlined in the November email.

The tenants' petition alleged that "KMB repeatedly entered [the] premises[,] causing multiple trespasses and in violation of 562A.19 & 562A.35(2)." Chapter 562A is the Iowa Uniform Residential Landlord and Tenant Act (IURLTA), which "generally defines the legal rights and obligations of a landlord and tenant." *Lewis v. Jaeger*, 818 N.W.2d 165, 178 (Iowa 2012). The IURLTA addresses unlawful entry by the landlord, stating,

> If the landlord makes an unlawful entry or a lawful entry in an unreasonable manner or makes repeated demands for entry otherwise lawful but which have the effect of unreasonably harassing the tenant, the tenant may obtain injunctive relief to prevent the recurrence of the conduct, or terminate the rental agreement. In either case, the tenant may recover actual damages

not less than an amount equal to one month's rent and reasonable attorney fees.

Iowa Code § 562A.35(2). But at trial, the tenants established that they were not alleging a violation of this statute and were alleging common law trespass torts instead.

The magistrate concluded that the tenants had a successful claim for common law trespass on four occasions when KMB showed the property without giving the tenants a twenty-four-hour notice—twice on October 26, 2022, and once each on November 28, 2022, and February 15, 2023. It explained that these four showings constituted trespass because "each showing was an entry into the unit without [the tenants'] consent." The magistrate rejected the tenants' argument that KMB's November email providing a timeframe for the showings was contractual, such that any attempt to show the unit outside of that timeframe was a trespass. Likewise, it rejected the tenants' assertion that each time KMB attempted to show the property without notice constituted a trespass because the tenants turned KMB away without showing the unit on some of these occasions.

Finally, the magistrate determined that the tenants were entitled to $126 in damages for the trespasses. It based this amount on the total of three days of the tenants' rent, as the magistrate concluded that the two trespasses that occurred on the same day only warranted damages for one day's rent. It denied the tenants' request for attorney fees under Iowa Code section 562A.12(8), ruling that the tenants' "trespass action is not, in and of itself, an action on a rental agreement as would permit an award of attorney fees" under the statute.

On review, the district court largely affirmed the magistrate's ruling. It deferred to the magistrate's finding that KMB trespassed on four occasions and agreed with the magistrate that KMB's November email did not represent a

binding contract or modification of the lease. However, it disagreed with the magistrate's computation of damages for the two trespasses that occurred on the same day, explaining that "a landlord could commit trespass ten times in one day, but the nine repeated trespasses would go unaccounted for under the law."

Accordingly, the district court concluded that "each additional trespass in a single day shall be half the daily rental value," while one trespass in a single day required the daily rental value. Under this calculation, the district court awarded the tenants three days of daily rent valued at $42 per day, plus an additional $21 for the second trespass on the same day, for a total of $147. The district court affirmed the magistrate's conclusion that the tenants were not entitled to attorney fees under Iowa Code section 562A.12(8). We retained the tenants' appeal.

## II. Analysis.

The tenants present three issues on appeal, and two of them depend on how many trespasses occurred. The district court concluded that KMB trespassed four times by showing the unit without notice and consent. The tenants argue that the district court should have found an additional eleven[2] trespasses for the times that KMB entered to show the unit outside of the schedule specified in the November email. Additionally, while KMB's brief appeared to challenge the district court's ruling that there were four trespasses, it did not file a cross-appeal and conceded at oral argument that it was not challenging this conclusion. *See Est. of Ryan v. Heritage Trails Assocs., Inc.*, 745 N.W.2d 724, 728 (Iowa 2008) ("It is well settled that if a party fails to appeal the

---

[2]Although the tenants argue that the district court erred "in not finding that Defendants trespassed an additional 12 times," they also state in their brief that "the magistrate [and the district court] correctly found four trespasses which consisted of four entries without notice, one of which overlaps with the 12 entries outside the days and times agreed." Upon questioning during oral argument, the tenants clarified that they are claiming an additional eleven trespasses.

district court's ruling, it can have no greater relief or redress in our court than was afforded to that party in the district court."). Therefore, we are only examining the tenants' additional eleven trespass claims.

**A. The District Court Correctly Rejected the Tenants' Additional Trespass Claims.** The tenants maintain that the district court erred in concluding that they gave implied consent for KMB to show the unit an additional eleven times outside of the schedule specified in the November email. We review small claims actions tried at law for correction of errors at law. *De Stefano v. Apts. Downtown, Inc.*, 879 N.W.2d 155, 164 (Iowa 2016). We are bound by the district court's factual findings if there is substantial evidence to support them. *Id.*

Consent, express or implied, negates any finding of trespass, and it exists "where the plaintiff's conduct reasonably led the defendant to believe the defendant had authority for the actions taken with regard to the property." *Larson v. Great W. Cas. Co.*, 482 N.W.2d 170, 173 (Iowa Ct. App. 1992); *see also Alexander v. Med. Assocs. Clinic*, 646 N.W.2d 74, 76 (Iowa 2002) ("A 'trespasser' is one who has no legal right to be upon another's land and enters the land without the express or implied consent of the owner."). It may be implied "from custom, usage, or conduct," such as the tenants' "inaction in the face of a prior entry" by KMB if the tenants "had actual knowledge of [KMB]'s intention to enter." 75 Am. Jur. 2d *Trespass* § 73, at 75–76 (2007).

The tenants' challenge appears to be twofold: (1) the eleven times that KMB entered the unit outside of the November email schedule were trespasses based on the schedule's existence, and (2) the tenants did not give implied consent for these eleven showings by allowing KMB to enter the unit because they did not know that they could withhold consent. Notably, the tenants have changed their argument on appeal regarding the nature of the email. At trial, the tenants

argued that KMB's email outlining a schedule to show the unit during certain days and times "was contractual in nature, thus making any showing outside of those days and times a trespass."

On appeal, they assert,

> On reflection, Plaintiffs believe it is incorrect to analyze the email as a mutual agreement, because a landlord does not have an unlimited right of entry that they can agree to limit. Legally the email was the landlord asking for consent of the tenant to enter after the tenant exercised their right to object to entry.

(Footnote omitted.) In summary, the tenants argued before the district court that the email was a mutual agreement, which KMB breached, but they are now claiming that this argument was incorrect and ask us to view the email as a request from KMB to enter the tenants' unit. This argument is not properly before us because the district court did not have the opportunity to rule on it. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Nevertheless, whether the email is a request for consent or a mutual agreement does not affect our analysis of whether KMB had the tenants' implied consent to enter on the eleven occasions at issue. Under the leasing agreement, the tenants could not unreasonably withhold consent to KMB to enter and show the unit to prospective tenants. The leasing agreement also required KMB to give the tenants a twenty-four-hour notice of its intent to enter and to limit its entry to "reasonable times."

By all appearances, the agreement operated accordingly. Stodola's testimony supports this. As the magistrate documented,

> She testified that for the unscheduled showings, the management company representative would come, knock on the door, she would tell them that no notice was given and they would leave and reschedule. She testified that, when KMB provided her with 24 hour

notice that she did not have a choice as to whether she could deny them entry, but felt that she had a choice when they arrived without notice. She testified that if she received 24 hour notice she would let them in, but if she did not she would not let them in.

The tenants were clearly aware that they could withhold their consent for KMB to enter and show the unit when KMB did not provide a twenty-four-hour notice. However, they assert that they could not have consented to KMB's entry on the occasions when KMB did provide that notice because the tenants were unaware of their right to refuse entry. But consent does not depend on whether the tenants knew of their right to withhold it. We reached a similar conclusion in the context of consensual law enforcement searches when we held that "there is no per se requirement [for law enforcement] to inform individuals that they are free to refuse consent to a search or to show that individuals knew they had the right to refuse consent." *State v. Hauge*, 973 N.W.2d 453, 466 (Iowa 2022).

Frankly, "[e]ven when the person concerned does not in fact agree to the conduct of the other, [their] words or acts or even [their] inaction may manifest a consent that will justify the other in acting in reliance upon them." Restatement (Second) of Torts § 892 cmt. *c*, at 363 (A.L.I. 1979) [hereinafter Restatement (Second)]; *see also State v. Bauler*, 8 N.W.3d 892, 905 n.5 (Iowa 2024) ("We frequently rely on the Restatement of Torts as a source of the common law of trespass."). Ultimately, implied consent is about how the tenants' actions were perceived, not how they were intended, as it hinges on whether the tenants' conduct "reasonably led [KMB] to believe [it] had authority for the actions taken with regard to the property." *Larson*, 482 N.W.2d at 173.

The evidence before the small claims court and the district court indicates that the tenants did withhold consent at times, and KMB's representatives did not enter on those occasions. Substantial evidence supports the lower court's conclusion that KMB trespassed on no more than four occasions: i.e., when it

had given less than a twenty-four-hour notice and the tenants did not expressly consent to this abbreviated notice period.

**B. The Record Supports the District Court's Determination of Trespass Damages.** The tenants contest the district court's award of $147 in damages for four trespasses, arguing "that loss of use is not the appropriate basis or measure for trespass" on the tenants' unit.[3] The district court based this award on the daily cost of rent, which was valued at $42 per day, plus an additional $21—or half of the daily rent—for the second trespass that occurred on the same day. The district court's ruling is less than clear on how it measured these damages, but it appears that it did so based on its agreement with the magistrate that the measure of damages was based on the tenants "los[s] [of] their right to exclusive possession of the premises." The tenants maintain that this measure is inadequate because it does not deter trespassing. Yet, nothing in the law or evidence presented warrants that.

"The determination of the amount of damages in a bench trial ordinarily lies within the sound discretion of the trial court." *Hawkeye Motors, Inc. v. McDowell*, 541 N.W.2d 914, 917 (Iowa Ct. App. 1995). We will not disturb an award of damages on appeal "so long as the record discloses a reasonable basis for which the award can be inferred or approximated." *Id.* at 918. The measure of damages for the tenants' brief loss of use and right to exclude others from their rental home is an issue of first impression for our court. Thus, we look to the Restatement (Second) of Torts for guidance. *See Bauler*, 8 N.W.3d at 905 n.5.

---

[3]KMB argues that the tenants only preserved error on the amount of the damages, not the measure of damages because they "did not suggest to the Small Claims Court how damages should be measured." But both the magistrate and district court had to determine how to measure the damages to reach the damages amount, and the tenants briefed the measure of the damages to the district court, which ruled on it. Therefore, it is properly before us on appeal. *See Meier*, 641 N.W.2d at 537 ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Under the Restatement, the tenants are "entitled to recover . . . *at least* the rental value of the chattel or land during the period of deprivation." Restatement (Second) § 931 cmt. *b*, at 552 (emphasis added). The tenants acknowledge this in their reply brief and calculate based on the brief time required for each showing that "the correct total for loss of use damages for the four trespasses in the instant case is $1.80." By that measure, the district court's award was generous. But not generous enough, according to the tenants, who assert that the correct measure of damages is an award that is "set in a high enough amount to protect that interest [to exclusive possession] from being infringed."

The problem with the tenants' argument is that our review on appeal is only as to whether the record provides a reasonable basis for the award, and it does. *See Hawkeye Motors, Inc.*, 541 N.W.2d at 917. If a greater level of deterrence had been desired, perhaps the district court could have awarded punitive damages if the record supported them. *See Hagenson v. United Tel. Co. of Iowa*, 209 N.W.2d 76, 82 (Iowa 1973) (en banc) (explaining that a landowner may be entitled to punitive damages for trespass in certain cases); *In re Est. of Vajgrt*, 801 N.W.2d 570, 575 (Iowa 2011) ("We have said that punitive or exemplary damages serve three purposes: (1) punishment, (2) specific deterrence, and (3) general deterrence."). In fact, the tenants sought $250 in damages for each trespass, though they admitted to "essentially pull[ing] [this] out of thin air" and did not base it on specific damages.

Even now, despite arguing that the district court's measure of damages was wrong, they do not propose a clear alternative. Instead, they simply argue that compensation should be "determined by the finder of fact on a case by case basis." We see no reason to disturb the district court's determination of damages, and we affirm the $147 award.

**C. The District Court Correctly Concluded that Iowa Code Section 562A.12(8)'s Attorney Fees Provision Does Not Apply.** The tenants challenge the district court's decision not to award attorney fees under Iowa Code section 562A.12(8), which states, "The court may, in any action on a rental agreement, award reasonable attorney fees to the prevailing party." The district court concluded that this section did not apply to the tenants' case because they prevailed under a common law claim instead of a statutory claim. Additionally, it reasoned that Iowa Code section 562A.12(8) "is located under the Rental Deposits section of Chapter 562A," but the tenants did not prevail on a rental deposit dispute. We typically review the district court's award of attorney fees for an abuse of discretion, but the tenants' claim also involves statutory construction, which we review for correction of errors at law. *See De Stefano*, 879 N.W.2d at 164.

As previously noted, chapter 562A provides its own action for trespass, which expressly allows for recovery of attorney fees. Iowa Code § 562A.35(2) ("If the landlord makes an unlawful entry or a lawful entry in an unreasonable manner . . . , [in addition to an injunction or termination of the rental agreement,] the tenant may recover actual damages not less than an amount equal to one month's rent and reasonable attorney fees."). There is no authority to award attorney fees under Iowa Code chapter 562A when the plaintiff is not pursuing a cause of action under that chapter.[4] *Severson v. Peterson*, 364 N.W.2d 212, 214 (Iowa 1985). The district court correctly applied that precedent here.

---

[4]Although the tenants' petition alleged that "KMB repeatedly entered [the] premises[,] causing multiple trespasses and in violation of 562A.19 & 562A.35(2)," they abandoned this argument and replaced it with their claim of common law trespass. At oral argument, they confirmed that they did not take the necessary steps to pursue an improper access claim under Iowa Code section 562A.35.

Still, the tenants assert that they may receive attorney fees under the plain language of Iowa Code section 562A.12(8) because this is an "action on a rental agreement" and the statute's title of "Rental deposits" cannot limit the meaning of the statute's text. While the tenants are correct that "the title of a statute cannot limit the plain meaning of the text, it can be considered in determining legislative intent." *State v. Ross*, 941 N.W.2d 341, 347 (Iowa 2020) (quoting *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004)). We also consider the statute within the whole of the IURLTA, as we must construe the statute so that no part of the IURLTA is superfluous. *Cf. State v. Jennie Coulter Day Nursery*, 218 N.W.2d 579, 582 (Iowa 1974) ("In determining the meaning of a statute all provisions thereof and the Act of which it is a part must be considered. We should endeavor to construe our statutes so that no part will be rendered superfluous.").

Considering the title of Iowa Code section 562A.12(8) and the statute's context within the whole of the IURLTA, we hold that Iowa Code section 562A.12(8) applies only to rental deposit disputes. Importantly, there are several other statutes within the IURLTA that allow landlords and tenants alike to recover attorney fees in specific circumstances. Examples include when a tenant willfully and in bad faith remains in possession of the unit without the landlord's consent after the rental agreement expires under Iowa Code section 562A.34(4), when the landlord willfully does not comply with the rental agreement under Iowa Code section 562A.21(2), or when the tenant refuses to allow the landlord lawful access under Iowa Code section 562A.35(1). Some of these require additional findings of willful conduct or bad faith that are not required to obtain attorney fees under Iowa Code section 562A.12(8). *See, e.g.*, *Id.* §§ 562A.21(2), .34(4).

Like Iowa Code section 562A.12(8), these statutes involve actions on a rental agreement, and all of them would be superfluous if we interpreted Iowa

Code section 562A.12(8) as the tenants would like to cover *any* action involving a rental agreement. The tenants' interpretation would also authorize attorney fees in actions that the legislature did not seek to include, as only some statutes within the IURLTA expressly allow attorney fee awards. This contradicts our principles of statutory interpretation because we presume that when the legislature "includes particular language in one section of a statute but omits it in another section of the same Act," it "acts intentionally and purposely in the disparate inclusion or exclusion." *MIMG CLXXII Retreat on 6th, LLC v. Miller*, 16 N.W.3d 489, 497 (Iowa 2025) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002)).

Accordingly, the only reasonable interpretation of Iowa Code section 562A.12(8) is that the district court may, *in any rental deposit dispute action*, award the prevailing party reasonable attorney fees. The district court did not err in concluding that Iowa Code section 562A.12(8) did not apply, so we affirm the district court's decision not to award the tenants attorney fees.

**III. Conclusion.**

For these reasons, we affirm the district court judgment.

**Affirmed.**